# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANA ALEXIS MADISON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. EDCV 17-444 AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER** |

Plaintiff seeks review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter now is ready for decision.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income, alleging that she became disabled and unable to work on August 31, 2009. Plaintiff's claim was denied initially and on reconsideration. An Administrative Law Judge ("ALJ") conducted hearings on October 7, 2014 and July 16, 2015, at which Plaintiff, her attorney, and a vocational expert ("VE") were present.

(Administrative Record ("AR") 33-78.) In a July 24, 2015 written decision that constitutes the Commissioner's final decision, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. The ALJ further determined that Plaintiff's RFC did not preclude her from performing jobs that exist in significant numbers in the national economy. Accordingly, the ALJ found Plaintiff not disabled at any time from August 31, 2009, her alleged onset date, through the date of the ALJ's decision. (AR 14-27.)

**DISPUTED ISSUES**

1. Whether the ALJ's residual functional capacity ("RFC") finding was supported by substantial evidence.
2. Whether the ALJ erred in finding that Plaintiff's impairments did not meet or equal section 1.02A of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[1]
3. Whether the ALJ properly assessed Plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more

---

[1] Plaintiff's "Issue No. 1" includes both a challenge to the ALJ's RFC determination and a challenge to the ALJ's conclusion that Plaintiff's impairments did not meet or equal Listing 1.02A. (ECF No. 23 at 3-7.) Plaintiff's arguments are more appropriately viewed as two separate issues.

2

than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

**1. Plaintiff's RFC**

The ALJ summarized Plaintiff's medical records, which reveal that Plaintiff is morbidly obese with a history of recurrent right knee dislocations and patellar instability. (AR 434, 453, 526-528.) A February 2013 MRI of Plaintiff's left knee revealed an anterior cruciate ligament tear. (AR 540-541.) A December 2013 MRI of Plaintiff's right knee revealed an anterior cruciate ligament tear and degenerative joint disease. (AR 551-552, 569-570.) In January 2014, Plaintiff underwent surgery on her right knee to repair the anterior cruciate ligament. (AR 498-499, 541, 552, 615.) June 2014 x-rays of Plaintiff's left knee showed moderate to severe degenerative joint disease with medial join space narrowing. (AR 469.) Examination notes indicate that Plaintiff's left knee has a limited range of motion. (AR 453.) Plaintiff's prescribed medications include Norco, MS Contin (morphine), Lidoderm patch, among others. (*See* AR 435.)

After considering the record, the ALJ found that Plaintiff suffered from the following severe impairments: obesity; history of right patella dislocation with patellar instability, status post surgical repair in January 2014; internal derangement of the left knee; asthma; and bipolar disorder. (AR 19.) The ALJ concluded that Plaintiff retained a RFC to perform a limited range of light work, an assessment that included the ability to stand or walk for two hours in an eight-hour day. (AR 21.)

Plaintiff challenges the ALJ's determination that she retains the capacity to stand or walk for two hours in an eight-hour day, arguing that the ALJ failed to properly consider evidence supporting Plaintiff's disability. Plaintiff, however, does not point to any medical evidence contradicting the ALJ's RFC assessment, nor could she. Review of the record confirms that the medical experts opined that

3

Plaintiff was able to stand or walk for at least two hours in an eight-hour day. (*See* AR 91, 108, 122, 134.) Dr. Vicente Bernabe, a Board Certified Orthopedic Surgeon, found that Plaintiff was able to stand or walk continuously for one hour for a total of six hours in an eight-hour day. (AR 510, 519.)[2]

Plaintiff argues that the ALJ improperly rejected the state agency medical consultants' opinions that she requires a cane for prolonged ambulation. (ECF No. 23 at 5.) This argument is unavailing for several reasons. To begin with, the ALJ was entitled to rely upon the contrary medical evidence to conclude Plaintiff did not need for an assistive device – namely the undisputed absence of a physician's prescription for an assistive device and Dr. Bernabe's opinion that no assistive device was medically necessary. (AR 510, 519.) In addition, the ALJ reasonably attributed less probative value to the state agency medical consultants' opinions because they were issued in May 2013 and November 2013, prior to Plaintiff's surgery to repair her right knee. (AR 22.) Finally, the question of whether Plaintiff needs a cane for prolonged ambulation is not determinative of Plaintiff's RFC assessment. Even the state agency medical consultants who opined that Plaintiff needed an assistive device provided an RFC assessment consistent with the ALJ's conclusion. That is, the state agency medical consultants found that Plaintiff was able to stand or walk for two hours in an eight-hour day. (AR 91, 108, 122, 134.)

Next, Plaintiff argues that the ALJ failed to consider the combination of her obesity and her bilateral knee impairments in making his RFC determination. (ECF No. 23 at 6.) Generally, where there is evidence of obesity, the ALJ must determine

---

[2] In her memorandum, Plaintiff states, "[i]t is important to note that Dr. Bernabe has since been removed as a consultative examiner by this Administration in March of 2017, at least in part because of his unsupportable medical opinions." (ECF No. 23 at 5-6.) The Commissioner has presented evidence that Dr. Bernabe was removed due to complaints of rudeness. (ECF No. 25 at 6; ECF No. 251 (Declaration of Lynn Harada).) Plaintiff does not argue that the ALJ was not entitled to rely on Dr. Bernabe's opinion, and the Court rejects any such suggestion.

the effect of the claimant's obesity upon her other impairments, her ability to work, and her general health. *See Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, ¶¶ 1.00Q, 3.00I & 4.00I (directing adjudicators to "consider any additional and cumulative effects of obesity" because obesity is "a medically determinable impairment often associated with" musculoskeletal, respiratory or cardiovascular impairments that "can be a major cause of disability in individuals with obesity," and stating that the combined effects of obesity with other impairments may be greater than expected without obesity).

Here, the ALJ discharged that duty. The ALJ found that Plaintiff's obesity was one of her severe impairments, and stated that he considered the entire record including the effects of all of Plaintiff's impairments before rendering his RFC determination. (AR 19-25.) Although obesity can complicate musculoskeletal impairments, the ALJ adequately considered the combined functional effects of Plaintiff's obesity and other impairments in finding her capable of a restricted range of light work. Plaintiff fails to point to treatment notes, diagnoses, or any other medical evidence of any functional limitation caused by Plaintiff's obesity that the ALJ should have considered, but did not. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (the ALJ did not err because claimant "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider."); *Harshman v. Comm'r of Soc. Sec.*, 2016 WL 2962212, at *5 (E.D. Cal. May 23, 2016) (ALJ did not err in assessing impact of claimant's obesity where claimant failed to point to evidence supporting contention that his obesity caused further limitations than those assessed by the ALJ); *Trujillo v. Astrue*, 2009 WL 4908839, at *6 (C.D. Cal. Dec. 11, 2009) (same).

Plaintiff's remaining argument is that the ALJ's RFC assessment failed to take into account Plaintiff's subjective complaints. According to Plaintiff, she has "maintained consistently throughout the relevant time period … that she is not

capable of being on her feet for more than a few minutes at a time and requires the use of an assistive device when standing or walking." (ECF No. 23 at 5.) This argument essentially challenges the ALJ's rejection of Plaintiff's subjective limitations, a claim that is discussed below.

### 2. Listing 1.02A

Plaintiff contends that the ALJ erred in finding that her impairments did not meet or equal section 1.02A of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. Specifically, she maintains that "when her obesity is considered in combination with her degenerative knees," she meets or equals Listing 1.02A. (ECF No. 23 at 7.)

Plaintiff bears the burden of showing that she has an impairment that meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. To "meet" a listed impairment, a claimant must establish that his or her condition satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to all of the criteria for the most similar listed impairment. *Tackett*, 180 F.3d at 1099-100 (quoting 20 C.F.R. 404.1526); *see Sullivan*, 493 U.S. at 531.

In order to be considered presumptively disabled under Listing 1.02A, a claimant must demonstrate that (1) she has major dysfunction of a major peripheral weight-bearing joint (i.e., hip, knee, or ankle) characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint; (2) medical imaging reflects narrowing, destruction, or ankylosis of the affected joint; and (3) the dysfunction results in an "inability to ambulate effectively, as defined in [Listing 1.00(B)(2)(b)(2)]." 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 1.02, 1.02A. Listing 1.00B2b defines "inability to ambulate effectively" as an "extreme limitation of the

ability to walk," and provides a non-exhaustive list of examples, including "the inability to walk without the use of a walker, two crutches or two canes," "the inability to walk a block at a reasonable pace on rough or uneven surfaces," and "the inability to carry out routine ambulatory activities, such as shopping and banking." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02A, 1.00B2b.

Plaintiff does not contend that any physician found that her impairments met or equaled a listing. To the contrary, the only medical opinion on the issue is that of H. Amado, M.D., who found that Plaintiff was not presumptively disabled under Listing 1.02. (AR 90.)

Plaintiff's argument that the ALJ failed to consider the combined affect of her obesity before concluding that she did not meet Listing 1.02 fails for the same reasons her RFC challenge fails. It is Plaintiff's burden to establish whether obesity in fact resulted in a level of functional loss equal to a Listing. *Bacom v. Colvin*, 2013 WL 5372865, at *5 (E.D. Cal. Sept. 25, 2013). As discussed above, the record lacks medical evidence demonstrating that Plaintiff's impairments result in the extreme limitation on walking required by Listing 1.02A. The crux of Plaintiff's argument is that the ALJ should have believed her self-reports that she is incapable of standing or walking. She points out that medical personnel observed that Plaintiff appeared for her appointments in a scooter. (ECF No. 23 at 6.) Neither Plaintiff's self-reported limitations nor Plaintiff's use of a scooter not prescribed by a physician constitutes objective medical evidence of an inability to ambulate effectively. *See Graham v. Colvin*, 2014 WL 1328521, at *6 (W.D. Wash. Mar. 31, 2014) (no error in finding claimant did not meet Listing 1.04 where there was no objective evidence of inability to ambulate effectively); *Veniale v. Colvin*, 2014 WL 1246135, at *2 (C.D. Cal. Mar. 24, 2014) (affirming the ALJ's finding that claimant was not disabled under Listing 1.02A where the ALJ reviewed claimant's "medical history in detail and found that there was no medical evidence to establish that [claimant's] knee osteoarthritis was sufficiently serious to require the use of a

wheelchair or any other assistive device"); *Perez v. Astrue*, 831 F. Supp. 2d 1168, 1176 (C.D. Cal. 2011) (claimant failed to show she was unable to ambulate effectively where no physician provided an RFC assessment precluding walking, and where physician concluded claimant could walk four hours in an eight-hour day); *Hamilton v. Astrue*, 2010 WL 3748744, at *7 (C.D. Cal. Sept. 22, 2010) ("Plaintiff's self-reports of symptoms and functional limitations based on hip and joint pain cannot suffice to raise the severity of her related impairment to that of Listing 1.02A.").

### 3. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to properly consider her subjective complaints about her symptoms and limitations. Specifically, Plaintiff contends that the ALJ improperly rejected her assertion that she was unable to stand or walk for more than a few minutes. (ECF No. 24 at 8-10.)

Plaintiff appeared at both hearings using a four-wheel walker with a seat. (AR 40, 69.) Plaintiff explained that she began using the walker in January 2014 after her knee surgery, and claimed that she used it "all the time." (AR 69.) Before the surgery, Plaintiff used a cane "for more than a year." (AR 70.) Plaintiff said that she used the walker because she was "completely unstable" and that she expected to use it for the rest of her life. (AR 41.) According to Plaintiff, she is able to stand only for "maybe two or three minutes" before she has to sit down due to the pain. (AR 68-69.) She is able to walk only "a few feet" before she needs to rest. (AR 323.)

Where, as here, a claimant has presented evidence of an underlying impairment and the record is devoid of affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's subjective symptom statements must be "specific, clear and convincing." *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must

identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell*, 775 F.3d at 1138 (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 345-46 (9th Cir. 1991) (en banc)). A reviewing court should not have to speculate regarding the ALJ's grounds for rejecting a claimant's subjective symptom testimony, *Bunnell*, 947 F.2d at 346, and "implicit" findings that a claimant's testimony in not credible are insufficient. *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *see generally* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).

The Commissioner does not allege that there was affirmative evidence of malingering, and therefore the ALJ was required to articulate specific, clear and convincing reasons for rejecting the alleged severity of Plaintiff's subjective symptoms. The ALJ's reasons do not meet this standard.

1    The Commissioner points to the following reasons supporting the ALJ's credibility determination: (a) Plaintiff elected to continue conservative treatment; (b) Plaintiff's daily activities, specifically her ability to care for her four-year-old daughter, were inconsistent with Plaintiff's assertion that she could only stand for two to three minutes before needing to sit; and (c) the medical evidence did not support Plaintiff's alleged standing and walking limitations, including her alleged need for an assistive walking device. (ECF No. 25 at 9-10; AR 23-24.)

### (a) Conservative Treatment

The Commissioner argues that the ALJ properly discounted Plaintiff's subjective allegations by relying upon Plaintiff election to continue conservative treatment. (ECF No. 25 at 10.) The ALJ's discussion about Plaintiff's conservative treatment is found in a single sentence: "In January 2015 the claimant's physician discussed right[3] knee arthroplasty with the claimant, but given her age, the claimant elected to continue conservative treatment." (AR 23 (citing Exhibit B15F, p. 16).) The portion of the record cited by the ALJ includes the following notation:

> I talked about the natural history of the disease. Given the arthritis, I stated that knee arthroplasty would be the most definitive treatment, as well as providing optimal long-term paint relief. However, given the patient's age, I also talked about the conservative treatment options that we have, which include steroid injections, viscosupplementation, physical therapy, bracing, and electrotherapy. After weighing the options the patient elected to pursue a steroid injection along with OA bracing at this time.

(AR 605.)

---

[3] The ALJ misstated the evidence. These medical records relate to Plaintiff's left knee. (AR 604-605.)

Notwithstanding the Commissioner's argument, it is not evident that the ALJ actually considered Plaintiff's "conservative treatment" as a basis for discounting her credibility. The portion of the ALJ's decision consists of his recitation of Plaintiff's medical history and does not purport to analyze Plaintiff's credibility. Even assuming the ALJ meant to do so, such reliance was improper.

A conservative course of treatment can undermine a claimant's allegations of debilitating pain. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Orn*, 495 F.3d at 638. Here, Plaintiff's medical records demonstrate frequent treatments over the course of many months; the consistent use of narcotic pain medication (including morphine and Norco), a Lidoderm patch, a knee brace; at least one cortisone injection to Plaintiff's left knee; and four Orthovisc lubricant injections to her left knee. (*See* AR 447, 449, 452, 455, 456-457, 464, 603-620, 630-631.)

Courts in this district generally have found the use of narcotic medication in conjunction with other treatments to be non-conservative treatment. *See Martinez v. Colvin*, 2015 WL 4270021, at *6 (C.D. Cal. July 13, 2015) (citing *LapierreGutt v. Astrue*, 382 F. App'x. 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotics, occipital nerve blocks, and trigger point injections not conservative)); *Soltero De Rodriguez v. Colvin*, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015) (claimant's pain management plan consisting of narcotics and narcotic-like medications in addition to epidural steroid injections was not conservative); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative). Further, although a single steroid injection may be considered conservative treatment, *see Martinez v. Colvin*, 2015 WL 4270021, at *6 (C.D. Cal. July 13, 2015), regular steroid injections generally are not. *See, e.g., Veliz v. Colvin,* 2015 WL 1862924, at *8 (C.D. Cal. Apr. 23, 2015) (collecting cases and concluding that injections are generally

deemed non-conservative treatment when a claimant's pain is "treated (generally ineffectively) with a series of regular injections and more invasive procedures" (citations omitted)); *Samaniego v. Astrue*, 2012 WL 254030, at *4 (C.D. Cal. Jan. 27, 2012) (treatment not conservative when the claimant was treated "on a continuing basis" with steroid and anesthetic injections and narcotic medication); *Huerta v. Astrue*, 2009 WL 2241797, at *4 (C.D. Cal. July 22, 2009) (treatment including a "series of epidural steroid injections into [claimant's] cervical spine" was not conservative).

Considering the entire record, which demonstrates that over the course of many months, Plaintiff underwent at least five injections of either steroids or a lubricant designed to treat her knee pain and used copious amounts of narcotic pain medication, it was error to reject Plaintiff's subjective complaints on the ground that her treatment was "conservative." *See, e.g.*, *Hernandez v. Colvin*, 2015 WL 7853777, at *4 (C.D. Cal. Dec. 2, 2015) (the ALJ improperly considered the claimant's treatment to be conservative where the claimant obtained "repeated injections for pain, prescriptions for narcotic pain medication (including Tramadol and Vicodin) and surgery (although the surgery occurred several months after Plaintiff's last insured date)"); *Oldham v. Astrue*, 2010 WL 2850770, at *9 (C.D. Cal. July 19, 2010) ("The length of the record [of treatment] over time, the intensity of certain procedures, and the evidence of the numerous medications that Plaintiff took to alleviate pain render any argument that Plaintiff's treatment was "conservative" unconvincing.").

**(b) Daily Activities**

An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms," and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting," and "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012); *see Garrison*, 759 F.3d at 1016 (only if claimant's level of activity were inconsistent with her claimed limitations would those activities have any bearing on her credibility).

Here, Plaintiff testified that she took care of her four-year-old daughter. When the ALJ asked if there were "any times" when she was unable to take care of her daughter or felt like she was not "up to it", Plaintiff responded, "No, not ever." (AR 67.) In her Function Report, however, Plaintiff indicated that her mother helped her take care of her daughter, "especially if I can't get out of bed." (AR 319.) Plaintiff's Function Report also includes a statement that Plaintiff plays with her daughter and her toys "daily" and "without problems." (AR 322.) Following this statement, Plaintiff added, "If I have pain I can't do any of that…." (AR 322.)

At the hearing, Plaintiff also testified that she was able to do the cooking and "all the things" she needed to do inside the house, although sometimes she had a little help with the cooking. (AR 67.) In her Function Report, however, Plaintiff indicated that she needed assistance dressing as well as getting in and out of the shower. Plaintiff stated that she made her bed and prepared simple meals, but that meal preparation required only a few minutes of standing. (AR 320.)

Finally, Plaintiff stated that she went outside "about three days a week" and attended church once a week. (AR 321.) She testified that she was "definitely" able to attend her four-year-old daughter's preschool events. (AR 66-67.) According to her Function Report, when Plaintiff left the house, she travelled by car and others came along "in case" she needed help. (AR 321.)

The ALJ's decision addresses Plaintiff's daily activities as follows:

> In activities of daily living, the claimant has mild restriction. According to function reports, the claimant is only restricted in activities of daily living due to physical impairments. (Exhibits B4E and B5E). The reports also indicate the claimant goes outside three

13

> times a week and attends church regularly. (Exhibits B4E and B5E).
> She also testified she has little difficulty caring for her daughter.
>
> * * *
>
> Other than getting help with cooking sometimes because of knee pain, the claimant testified she has no problem caring for her four-year-old daughter and attending her school events. This type of activity is inconsistent with the claimant's testimony that she can only stand two to three minutes before needing to sit.
>
> * * *
>
> The undersigned finds the claimant and her mother, Ella Mack, not entirely credible regarding the limiting effects of the claimant's physical symptoms (Exhibits B4E and B5E; Testimony). The claimant is undoubtedly limited because of bilateral knee condition, but the objective medical and other evidence of record does not support her alleged limitations. The claimant testified she has always used a mobility device, a cane prior to the surgery, and a walker and knee brace after the surgery, but she is able to care for her young daughter with little difficulty and attend her school events.

(AR 20, 23-24.)

As an initial matter, Plaintiff contends that the ALJ misrepresented what Plaintiff does to care for her daughter and points to her Function Report, in which she stated that her mother helped her care for her daughter, "especially if I can't get out of bed." (ECF No. 24 at 11 (quoting AR 319).) Plaintiff's contention is unpersuasive. A fair reading of the decision reflects that the ALJ considered the Function Reports – identified as Exhibits B4E and B5E – but adopted Plaintiff's hearing testimony that she was unequivocally able to take care of her daughter. (*See* AR 67.) In doing so, the ALJ implicitly rejected the inconsistent statements in

Plaintiff's Function Report.[4]

Plaintiff argues that the ALJ's consideration of her daily activities is erroneous because none of the activities identified are necessarily inconsistent with her subjective limitations. (ECF No. 23 at 12). Given the record, the Court agrees.

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Nevertheless, the ALJ was required to explain which particular activity he considered incompatible with Plaintiff's allegation that she could not stand or walk for more than a few minutes. *See Burrell*, 775 F.3d at 1138 (error where "the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony").

Of course, the ability to care for a child may be inconsistent with disabling limitations. *See Molina*, 674 F.3d at 1113. At the same time, the mere fact that a claimant is able to care for a small child "does not constitute an adequately specific conflict with her reported limitations." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). In the cases where caring for a child has been found a sufficient basis for making an adverse credibility finding, courts have pointed to a specific activity – *e.g.*, walking children to school – that conflicted with the claimant's alleged limitations. *See, e.g., Molina*, 674 F.3d at 1113 ("the ALJ could reasonably conclude that Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering debilitating panic attacks."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ALJ properly found that claimant's allegation of totally disabling pain was undermined

---

[4] At the hearing, Plaintiff did not claim that she required assistance in caring for her daughter. Nor did Plaintiff testify that she required assistance cooking. Instead, she explained that she was able to cook on her own, but sometimes she received a "little bit of help" "finishing it up." (AR 67.)

by her ability to attend to "all of [her two young] children's needs; meals, bathing, emotional, discipline, etc." without assistance from her husband, and her ability to make daily outings to her son's school, soccer games, and taekwondo lessons).

Unlike *Molina* and *Rollins*, the record here contains little information about what Plaintiff's childcare activities entailed. For example, there are no findings about whether Plaintiff fed, bathed, or dressed her daughter. The ALJ provided only a blanket statement about Plaintiff's ability to care for her four-year-old daughter, failing to identify any specific activity within that "ability" that he believed was inconsistent with Plaintiff's alleged limitations.

When presented with a similar record, the Ninth Circuit has found it improper for the ALJ make an adverse credibility determination. *Trevizo*, 871 F.3d at 682. In *Trevizo*, the ALJ discredited the claimant's subjective complaints based upon her ability to care for her young adoptive children. The Ninth Circuit noted that the ALJ failed to develop the record "regarding the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations, nor did the ALJ inquire into whether Trevizo cared for the children alone or with the assistance of her grandchildren or other family members." *Id.* at 676. It held that because the record lacked specific information about the claimant's childcare activities, the ALJ could not properly find that those activities conflicted with her subjective complaints and limitations. *Id.* at 682.

Like *Trevizo*, the ALJ's reliance upon Plaintiff's general ability to take care of her daughter to discredit her subjective complaints was improper. *See Garcia v. Berryhill*, 2017 WL 4142223, at *7 (C.D. Cal. Sept. 18, 2017) (the ALJ improperly relied upon claimant's childcare and fostering activities to discredit her subjective complaints where there was "virtually no information in the record" about what physical activities the childcare entailed); *cf. Workman v. Berryhill*, 2017 WL 4780610, at *9 n.9 (D. Or. Oct. 23, 2017) (the ALJ properly relied upon claimant's

16

childcare activities to discredit her subjective complaints, distinguishing *Trevizo* because the record in *Workman* provided details as to what the claimant's childcare activities involved, including evidence that the claimant was the only individual who cared for her two children and that she fed, clothed, and changed them).

The ALJ's reliance upon Plaintiff's other daily activities is similarly inadequate. The ALJ apparently assumed that Plaintiff's ability to "go outside three times a week," attend church once a week, and attend preschool events (presumably occasionally) was inconsistent with her alleged inability to stand or walk for more than a few minutes. However, the record lacks information about what physical exertion these outings required. For example, the ALJ made no findings about how Plaintiff travelled when she "went outside," the distance between her home and church or her home and her daughter's school, or whether she required assistance on these excursions as she suggested in her Function Report. At least on this record, the ALJ's assumption that the physical demands of Plaintiff's daily activities were at odds with her alleged limitations is not supported. *See Garrison,* 759 F.3d at 1015-16 (noting that "[w]e have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," and holding that the ALJ erred in concluding that the claimant's reported daily activities, which "included talking on the phone, preparing meals, cleaning her room, and helping to care for her daughter," were inconsistent with her pain complaints); *Gooden v. Colvin*, 2016 WL 6407367, at *6 (C.D. Cal. Oct. 28, 2016) (the ALJ improperly relied upon claimant's ability to perform a caregiver job "22 hours a week and engage in various exertional activities such as cooking, cleaning, shopping, doing the laundry, carrying groceries, and driving a car," because the ALJ did not explain how those chores or other activities contradicted claimant's subjective symptom testimony or were

transferable to a work setting); *Sandoval v. Colvin*, 2014 WL 4854565, at *12 (C.D. Cal. Sept. 30, 2014) (it was not clear that claimant's daily activities, including taking her son to school, doing unspecified chores, attending church, and occasionally driving, were inconsistent with claimant's alleged limitations, "particularly given her statements that she rarely, if ever, drives alone, spends part of the morning lying down, and spends most of her day at home"); *see generally Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

Citing Plaintiff's ability to perform basic activities without explaining how these activities are inconsistent with Plaintiff's complaints is legally insufficient. Accordingly, reliance upon Plaintiff's daily activities is an inadequate basis for the ALJ's credibility determination. *See Brown-Hunter*, 806 F.3d at 493-94.

### (c) Medical Evidence

The ALJ correctly pointed out that no medical evidence supported Plaintiff's allegation that she was unable to stand or walk for more than a few minutes. To the contrary, the medical experts concluded that Plaintiff was able to stand or walk anywhere from two to six hours in an eight-hour day. (AR 91-92, 108-109, 122, 134, 510, 519). Further, the ALJ found no medical evidence supporting Plaintiff's alleged need for an assistive device such as a cane or scooter. (AR 22-24.) The ALJ also relied upon Dr. Bernabe's report concluding that there was no medical necessity for an assistive device. (AR 510, 519.)

Lack of objective medical evidence is a factor an ALJ can consider in his credibility analysis, but it cannot form the sole basis for a credibility determination. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in

his credibility analysis."). Because the ALJ's other two reasons are insufficient, the absence of medical evidence alone is not legally sufficient to support his adverse credibility determination. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (where ALJ's initial reason for adverse credibility determination was legally insufficient, his sole remaining reason premised on lack of medical support for claimant's testimony was legally insufficient); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

## REMAND FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Therefore, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). It is not the Court's intent to limit the scope of the remand.[5]

IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 2/20/2018

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[5] For example, if on remand, the ALJ's findings about Plaintiff's ability to walk and stand differ from his original findings, the ALJ may need to perform a new analysis of Plaintiff's RFC and reconsider whether her impairments meet or equal a Listing. *See Carranza v. Colvin*, 2016 WL 3124612, at *4 (N.D. Cal. June 3, 2016) (on remand, a new RFC assessment may be necessary depending upon ALJ's new analysis of claimant's subjective symptoms).